JOHANNA C. TONN

*v.*

ALEX. PIER et al.

[Decided January 9th, 1914.]

1. Where, in a suit to enforce vendor's lien, it was admitted that payment of the purchase-money, though recited in the deed, was not made at the delivery of the deed, the burden of proving payment subsequent thereto was on defendant.

2. Evidence, in a suit to foreclose vendor's lien, *held* not to show that the vendee, subsequent to the delivery of the deed, made a payment to the vendor.

3. Where an attorney representing a vendee went to the home of the vendor, an old woman, and drafted an agreement of sale, the agreement providing for the execution by the vendee of a mortgage to secure the purchase-money, and the attorney undertook to represent the interests of the vendor in securing the mortgage, he should have, upon the execution of the deed, seen that her interests were protected, and that the mortgage was delivered.

Heard on bill, answers, replication and proofs.

*Mr. Adam J. Rossbach,* for the complainant.

*Mr. Clarence W. Blatt* and *Mr. Philip J. Schotland,* for the defendants.

EMERY, V. C.

This bill is filed to enforce a vendor's lien for unpaid purchase-money due to the complainant on the conveyance of her lands to the defendant. The lands were conveyed by virtue of a written contract of sale, in which the complainant agreed to convey for the sum of $2,530 a house and lot in Newark, New Jersey, the purchase-money to be paid $30 on the execution of the agreement, $1,000 by the payment of an existing mortgage on the premises, and the balance of $1,500 to be secured by a purchase-money mortgage, which should be the first mortgage. The $30 was paid, but the $1,000 mortgage has not been paid, nor has the $1,500 mortgage been given. Defendant received the deed on January 6th, 1912, but no mortgage nor any other memorandum or writing was then given to the complainant for the purchase-money.

The question is whether, subsequent to the deed and on February 14th, 1912, this purchase-money, $1,500, was paid to the complainant by the defendant in cash (bills, as he says, of $50 and under) at her house on that day. The burden of proving this subsequent payment is on the defendant, for it is admitted that the payment, although recited in the deed, was not made at the time of its delivery. The defendant produces a receipt for this sum of money, signed by the complainant, but undated, and the circumstances attending the delivery of the deed, and also the alleged payment of this sum of money to the complainant are such as to make the general rule of putting upon the defendant the burden of proof specially and emphatically applicable. Complainant is an old woman, nearly seventy-five years of age, an invalid and a German, who speaks very little English and cannot read or write the English language. She can write her own name in German, and the receipt is so signed. The receipt,

however, is written in English, and the payment of the money, if made at all, was made in a room of complainant's house where no one was present except the complainant and the defendant. Defendant says there was another person in the house with complainant when he went to pay the money, a woman whom he did not know, but that complainant and he went into another room and were alone at the time of payment. There was, therefore, no one other than the defendant to explain to her the terms of the paper which she signed as a receipt for $1,500, and the complainant swears that she did not receive this sum of $1,500, either at that time or at any other, and that as she understood, she was signing a paper that she was to get $1,500. The written agreement for sale was drawn by a young attorney just admitted to the bar, who was employed by the defendant to draw the agreement, and went with him to the complainant's house for that purpose. The agreement provided, among other things, that the complainant should remain in the premises free of rent during her life, and that the mortgage to be given to her should bear five per cent. interest and remain in force for a period at the option of defendant so long as the interest was regularly paid. This house and lot was substantially the only property the old woman owned. The occupation of the property and the interest on the mortgage would be substantially her entire provision for her support. At the time the agreement was signed the attorney for the defendant undertook to draw for the complainant the mortgage securing the purchase-money, and he was to prepare the deed. It does not appear that he ever did in fact draw the mortgage, and according to his account, the defendant having told him that he was going to pay the amount in cash, he did not, when he went to have the deed executed and delivered, take with him any mortgage, and he had the deed executed and delivered and recorded without securing the complainant in any way for her unpaid purchase-money upon the delivery of the deed, or securing for her any evidence that it was still due to protect her against the deed itself. By assuming to draw the mortgage for the complainant, under the agreement, the attorney undertook the duty of taking care of her interest as well as that of the purchaser upon the delivery of the deed.

He now gives contradictory statements of what took place at the time of the delivery of the deed. His first statement was that he did not take up the matter of the $1,500 with the complainant in any way beyond that

"I asked her if it was agreeable to her, what Mr. Pier said about paying off the $1,500; I asked her whether that was agreeable to her. *Q.* What did she say? *A.* She said 'Yes.'"

On further examination, being asked whether there was any talk whatever about the $1,500 mortgage, at the time of the execution and delivery of the deed, he replied, "I don't think there was; I don't remember," and being asked what was said or done, if anything, about the $1,500, he says:

"Mr. Pier had told me that he was going to pay it, or whether he did pay it, I don't remember; he told me that the $1,500 was to be paid; whether it was paid or was to be paid, I don't recollect now. *Q.* Was to be paid how? *A.* In cash. *Q.* What did Mrs. Tonn say about it? *A.* I don't remember whether she did say anything about it or not."

These admitted facts in the case show that by the action of the defendant and his attorney it occurred that the title was actually secured for this property without payment or security. of any kind for the unpaid purchase-money, or any evidence to show that the purchase-money was unpaid, and that this condition continued until the middle of February. The attorney seems, according to his account, to have had no further connection with the matter whatever of paying or securing the amount. There was a clear violation of the duty on his part to protect the interest of this old woman, on taking the title to her property from her, and this whole situation which existed from the time of receiving the deed up to the time of the alleged payment of the money in February, shows the business advantage that was taken of her and imposes on the defendant the decided.burden of proving by testimony other than his own that this money was paid. It should be further stated that the provision in the agreement drawn by the attorney, by which complainant was to remain on the property during her life, was omitted from the deed. This omission may have occurred by reason of the inexperience

of the attorney, but it is, nevertheless, a circumstance to be considered in connection with the entire outcome of a transaction on the part of the defendant which secured the delivery of a deed giving a free and clear title at once without the payment or security of the purchase-money, or any evidence that it was still unpaid.

There are also circumstances which corroborate to some extent the statement of the complainant that there was no payment. One of these is the payment of a sum of $23.50 in March, 1913, which, as is sworn to by complainant and two other witnesses, was paid expressly as interest to the complainant. And it was not until after this payment by him, and after subsequent inquiries of him and his lawyer and a mortgage was insisted on, on her behalf, that the claim was made that the money had been paid and this receipt was produced. The defendant on his part proves that he had the money for the payment of the mortgage and that a sum of $2,200 was drawn in cash from the bank in which he held his deposit, on the day of the payment, and it is claimed that this corroborates his story. To a certain extent it does—that is, as showing that he had this sum at that time, sufficient to make the payment, but this, of course, does not prove the payment, and to countervail proof of this character, there is, upon the other side, proof by the complainant that she has not now and never had any such sum of money as defendant claims to have paid to her. The question finally resolves itself into one as to whether the money was in fact then paid and whether the payment has been established. On the whole case I conclude that payment has not been established and I will advise a decree declaring that the purchase-money of $1,500, with interest, to be a lien upon the premises. Defendant having repudiated his obligation to pay either the principal money, to be secured by mortgage, or interest thereon, the unpaid purchase-money with interest is due at once. Decree will be settled on December 30th.